SANDY WILLIAMS v. DELIA LIVINGSTON ET AL.

Decided November 11, 1908.

**1.—Mental Capacity—Expert Testimony—Conclusion of Law.**

The issue being as to the mental capacity of the grantor to execute a certain deed, a physician, duly qualified as an expert upon diseases and infirmities of the mind, who was acquainted with the grantor and had attended her professionally, was asked the following question by the grantor's counsel: Whether between certain dates the grantor had, in the judgment of the witness, mind enough to comprehend and understand the legal effect of a deed or legal instrument. To which the witness answered, "In my opinion she had not." He was also asked: "Now, in seeing her in the condition you saw her in January, in your judgment, would it have been possible for her to have mind enough to have understood and comprehended the legal effect of a deed made in September." To which he answered, "No, I do not think she did." Held, the questions and answers sought and obtained from the witness a legal conclusion upon the very issue to be determined by the jury, and an objection upon that ground should have been sustained.

**2.—Same—Same.**

While the authorities are conflicting on the subject, it has been held in this State that it is not permissible to allow a witness who was acquainted and familiar with the grantor, to give in evidence his opinion that she did not have sufficient mind to execute a deed, or would know its effect or value. And so, it is not permissible for an expert to testify that a certain person whose mental capacity is in question, has not in his opinion sufficient mental capacity to transact business, because the opinion involves a conclusion of law.

Appeal from the District Court of Waller County. Tried below before Hon. Wells Thompson.

*J. D. Harvey, A. G. Lipscomb* and *W. J. Poole,* for appellant.

No brief for appellees received by the reporter.

N'EILL, ASSOCIATE JUSTICE.—On November 22, 1905, Delia Living-

ston sued Sandy Williams to cancel a deed to certain lands made by her to him on September 14th of the same year. The ground upon which cancellation was asked was mental incapacity of the grantor. Pending the suit the original plaintiff died, and, her death being suggested, Harry Stubblefield and Myra Downing, the heirs of deceased, were made parties plaintiff.

Defendant's answer consisted of a general demurrer, a disclaimer as to a part of the premises, a general denial and plea of not guilty.

The trial of the case resulted in a verdict and judgment for the plaintiffs.

The only issue in the case was Delia Livingston's mental capacity to make the deed. Upon this issue there was testimony *pro* and *con*, which required it to be submitted to the jury. Much opinion evidence upon the issue was introduced by either side, of which was the testimony of Dr. Osborne, who, having qualified as an expert upon diseases and infirmities of the mind and having testified that he observed Delia Livingston on several occasions between March, 1905, and January, 1906, having been called to treat her professionally, and that at times he considered her blank—no mind at all; her mind was weak—was asked by appellee's counsel whether, during the period between said dates she, in his judgment, had mind enough to comprehend and understand the legal effect of a deed or legal instrument, which he answered: "In my opinion she had not." Again he was asked: "Now, in seeing her in the condition you saw her in January, in your judgment, doctor, would it have been possible for her to have mind enough to have understood and comprehended the legal effect of a deed made in September?" which he answered: "No, I do not think she did." The appellant objected to each question and answer upon the ground that it invoked and obtained a legal conclusion of the witness upon the very issue to be determined by the jury, under instructions from the court as to the law, from the evidence introduced. The action of the court, allowing the questions to be asked and answered over appellant's objection, is the basis of the first assignment of error.

There can be no doubt about the assignment being well taken. The first question embodies the fact that the witness himself understood the legal effect of a deed or legal instrument. For, unless he knew its legal effect, he could not answer the question. The answer, then, embraces the witness' opinion on a matter of law as well as of fact; that is to say, the legal effect of a deed or legal instrument, and the condition or state of Mrs. Livingston's mind when she made the deed sought to be canceled. The legal effect of a deed or other legal instrument is a question of law with which a jury has nothing to do, but can only be decided by the court. The mental capacity of the maker of a deed is a matter of fact for the jury with which a court has nothing to do. Whenever it may become necessary for a jury to be informed as to the legal effect of a written instrument in order to enable it to determine whether the party who executed it had sufficient mental capacity, such information should come from the court and not from the witness stand. No witness should be permitted to give an opinion which, if the jury believes correct, would determine the matters of law as well as the fact involved. The opinion of the witness being, in part, upon a question of law addressed

to the court, and in part upon a matter of fact addressed to the jury, was on a mixed question of law and fact, and should not have been admitted as evidence. (Houston & T. C. Ry. Co. v. Roberts, 101 Texas, 418; Gulf, C. & S. F. Ry. v. Kimble, 49 Texas Civ. App., 622.)

What we have just said applies in all its force to the other question and answer embraced in the assignment.

Construing the answer in connection with the question, the witness was permitted to give it as his opinion that it was not possible for Mrs. Livingston to have mind enough to have understood the legal effect of her deed. If this was taken by the jury as evidence, as it must have done from its being admitted, the case was decided, both as to the law and facts, by the opinion of the doctor, and nothing remained for the jury to do except register his opinion in the form of a verdict, and return it to the court so that it might be entered as a judgment on its minutes in favor of the plaintiffs.

In Brown v. Mitchell, 88 Texas, 367, after an exhaustive review of the authorities, it was held by the Supreme Court, "That no witness will be permitted to testify to a legal conclusion from facts given either by himself or testified to by another. It is the province of the jury, from the testimony, to find the facts; but it is the duty of the court alone to inform the jury as to the rule of law by which they are to be governed in determining upon the sufficiency of the facts given to them by the witnesses. The conclusions or opinions to which witnesses may testify in this character of case" (one involving mental capacity) "are simply to be treated as facts presented to the jury by means of the conclusions drawn by the witnesses from their observations, for the reason alone that the facts are of such character that they are incapable of being presented, by stating conclusions drawn from their observation." See, also, Metropolitan Ins. Co. v. Wagner, 50 Texas Civ. App., 233; Mills v. Cook, 57 S. W., 81; Halff v. Curtis, 68 Texas, 642; 2 Wigmore on Ev., sec. 1958.

The testimony complained of by the fourth, fifth and sixth assignments of error, each presents the question whether it is permissible to allow a witness, who was acquainted with and familiar with the grantor, after testifying from his observation of her conduct and mental condition that she was very weak-minded, to give in evidence his opinion that she did not have sufficient mind to execute a deed, or would not know its effect or its value. While there is perhaps a conflict of opinion upon this question, as is indicated by the authorities collated in the notes under the section above cited from Wigmore on Evidence, we think in this State that it is controlled by the opinion of the Supreme Court in Brown v. Mitchell, *supra,* and that under it such evidence is inadmissible. We therefore sustain the three assignments referred to.

The seventh assignment of error involves the question whether it is permissible for a witness, who has shown himself qualified to testify as to one's mental condition or state, to give it as his opinion that such a one did not have sufficient mental capacity to "transact business." It is held that "What is sufficient capacity to transact business" is a matter of law, depending somewhat upon the nature of the business. As is said in Fairchild v. Bascomb, 35 Vt., 416, "A witness may not correctly apprehend the rule of law, and if he uses such an expression may be misled himself or may mislead the jury." See also Betts v. Betts, 113

Iowa, 111, 84 N. W., 975; McGibbons v. McGibbons, 119 Iowa, 140, 93 N. W., 55; Torrey v. Burney, 21 So., 348; Dominie v. Randolph, 27 So., 480; Shapter v. Pillar, 28 Col., 209, 63 Pac., 302; Turner's Appeal, 72 Conn., 305, 44 Atl., 310. As is said in Shapter v. Pillar, *supra* (a case wherein the issue was similar to the one here): "The great weight of modern authority, in such cases, in the absence of any statutory provision, is that such capacity is not properly the subject of opinion evidence, but must be determined by the probative facts bearing thereon." From the weight of authority upon the question raised by this assignment, we think such testimony inadmissible.

The special instruction asked by appellant was, in substance, embraced in the main charge, and its refusal was not error. The test of a grantor's capacity to make a deed, though stated in different language, was correctly given in the court's charge and the refused instruction.

On account of the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*