### FIRST NAT. BANK OF GRAHAM v. WILLIS et ux.

### No. 12785.

Court of Civil Appeals of Texas. Fort Worth.

March 11, 1933.

Fred T. Arnold, of Graham, for appellant.

McFarlane & McFarlane, of Graham, for appellees.

DUNKLIN, Justice.

This suit was instituted by the First National Bank of Graham against V. W. Willis and his wife, Lottie Willis, on two promissory notes, one for the sum of $943.30 and another for the sum of $7,215.51 and to foreclose a mortgage given on 343.3 acres of land situated in Young county. The defendants pleaded the homestead exemption, alleging that before the execution of the mortgage liens the property had been occupied and claimed by them as a homestead and later that 200 acres, described by metes and bounds, had been segregated and designated as a homestead in accordance with the provisions of the statutes.

Defendants' testimony on the trial was to the effect that in April, 1917, after they had purchased the land, they moved upon it and occupied it for eight years. About 1925 they

moved part of their family to Graham—a town about 3 or 4 miles distant from the land—in order to send some of their children to school. They did not buy a home in Graham but rented a house in which they resided and ran a restaurant, and V. W. Willis also engaged in hauling gravel, and he and his boys made a crop each year while they resided in Graham on the land in controversy; they also kept their cows, poultry, hogs, cattle, work stock, part of the household goods, and feed for the stock at the farm and went back and forth to attend to it while they resided in Graham, and kept their children in school during all the time they resided there. They finally moved back to the farm in 1930 after they had lived in Graham some 6 or 7 years.

The case was tried before the court without a jury and the testimony was sufficient to sustain the finding made by the trial judge that the defendants established their homestead on the land in controversy in the year 1917, and that the same has continued as such ever since.

The proof showed that the note for $943.-30 was secured by a vendor's lien on the tract of 343.3 acres and that the same has been duly extended from time to time by subsequent mortgages. The balance of the principal due at the time of the trial was $911.-45. The proof showed that the second note for the principal sum of $7,215.51 was secured by a mortgage on the entire tract, but the same was executed long after the defendants had established their homestead on the land. The record also shows that V. W. Willis had been discharged in bankruptcy and for that reason no personal judgment for the debt was awarded against either of the defendants; plaintiff consenting thereto. The court awarded a foreclosure of the vendor's lien for the $911.45 with interest, on the entire tract of 343.3 acres, but decreeing that resort be first had to the 143.3 acres before resort to the remaining 200 acres which the defendants had segregated from the entire tract as their homestead, and that the homestead tract be not sold except for the purpose of satisfying any balance due after the sale of the 143.3 acres. A foreclosure was denied for the note in the principal sum of $7,215.51 on the 200-acre homestead, but the court awarded a foreclosure for that note on the excess 143.3 acres as a second lien on that tract, to be satisfied out of any excess remaining after the sale thereof not necessary to satisfy the vendor's lien note for the $911.45.

From that judgment the plaintiff has prosecuted this appeal.

■ There is no merit in the objections made to the testimony of the two defendants to the effect that when they moved to Graham they intended to return to the farm as their home, on the ground that the same was a conclusion and self-serving. 22 Texas Jurisprudence, p. 88, par. 55.

■ The conclusion reached by the trial judge that the homestead exemption was not lost by the removal of the defendants to the town of Graham and their living there for a period of nearly 7 years is supported by the following authorities: Kerens National Bank v. Stockton, 120 Tex. 546, 40 S.W.(2d) 7, 77 A. L. R. 362; Birdwell v. Burleson, 31 Tex. Civ. App. 31, 72 S. W. 446; City Central Bank & Trust Co. v. Byrne (Tex. Civ. App.) 47 S.W.(2d) 432; articles 3832, 3833, 3839, Rev. Civ. Statutes; 22 Texas Jurisprudence, p. 11, § 2, pp. 71 to 88, inclusive, and numerous authorities there cited.

■ We overrule the further assignment to the effect that by an instrument in writing executed by the defendants in favor of the plaintiff there was a separation of the mineral in the land on which additional security was given to the plaintiff for the second note and which therefore was not subject to the homestead exemption, since that instrument merely gave security on "all the proceeds and moneys due and to accrue as an oil and gas royalty on the above described tract of land." It thus appears that that instrument merely related to the money that might be collected from the royalties and gave a lien on the same. It further appeared from the evidence that the oil well had been plugged and all the money realized from the royalties thereon had been paid over to the plaintiff.

■■ There is another assignment in the record presenting the contention that the two liens on the 143.3 acres should be satisfied in the inverse order of their execution. In other words, that proceeds of the sale of that land should be applied first to the payment of the second note and the excess remaining after satisfying the second note, be applied to the first note.

The doctrine so invoked is one in equity and to enforce it would be to cast a greater burden on the homestead than was created by the first note which was a vendor's lien, which could not be done without impairing the exemption guaranteed by the Constitution (article 16, § 50) and statutes in that by indirection the homestead could thereby be subjected in part to the satisfaction of the second mortgage executed after the exemption attached. 38 Corpus Juris, p. 1375; Kerens National Bank v. Stockton, 120 Tex. 546, 40 S.W.(2d) 7, 77 A. L. R. 362, and authorities therein cited. Furthermore, in order for the plaintiff to invoke that equitable relief a pleading therefor was necessary, which we do not find in the record. Rippetoe v. Dwyer, 49 Tex. 498.

Accordingly, all assignments of error are overruled and the judgment of the trial court is affirmed.